HENRY, APPELLANT, *v.* THE WELLINGTON TELEPHONE CO. ET AL., APPELLEES.

(No. 1042—Decided April 9, 1945.)

*Mr. James M. Schooler* and *Mr. Richard F. Stevens,* for appellant.

*Messrs. Bricker, Marburger, Evatt & Barton, Mr. Dan B. Symons* and *Mr. H. W. Ingersoll,* for appellees.

DOYLE, J. This is a derivative suit, brought against certain of the directors of the Wellington Telephone Company, in which it is alleged that (1) the said company "was required by law to carry a proper and adequate depreciation or deferred maintenance account" to provide an amount over and above the cost of maintenance "to keep the property of the public utility in a state of efficiency corresponding to the progress of the art or industry"; (2) the monies for depreciation charges must be set aside out of the earnings and carried as a depreciation fund and such funds "may be expended in new construction, extensions or additions

to the property of the public utility, or invested, and, if invested, the income from the investment shall also be carried in the depreciation fund. Such fund and the proceeds thereof may be used for the purpose of renewing, restoring, replacing or substituting depreciated property in order to keep the plant in a state of efficiency. Such fund and the proceeds or income therefrom shall be used for no purpose other than as provided in this section, except upon the approval of the commission''; (3) the defendant directors, in disregard of their duties, from the year 1931 to and including the year 1941, ''distributed to the stockholders out of the monies theretofore set aside as a depreciation reserve'' a total of $27,683.81, without the approval of the Public Utilities Commission, and by reason thereof are ''unable to keep the property of the company * * * in a state of efficiency corresponding to the progress of the art or industry, resulting in a deterioration of its properties and impairment of its service to the public''; (4) the reduction of the company's ''capital'' as a result thereof ''was not accomplished by proper vote of the directors and stockholders and that no approval thereof has been obtained from the Public Utilities Commission of Ohio as provided by law.''

The petitioner thereupon prays that the defendants ''be ordered and required to come to an accounting in respect to all matters and things set forth in this second amended petition and in respect to any and all violations of their respective duties as officers and directors of the Wellington Telephone Company; that said defendants * * * be required to restore any and all assets of such company by them respectively wrongfully and illegally paid out as dividends,'' and that judgment be rendered against them for any and all sums found to be due, etc.

To this petition an answer was filed, which, as to the actual controversy, is a general denial.

It is not claimed, and certainly could not be successfully urged, that this action is predicated upon the provisions of Section 8623-123*b et seq.*, General Code (in the General Corporation Act), for the reason that there is neither pleaded nor proved a case under such provisions. *Scullin* v. *Mutual Drug Co.*, 138 Ohio St., 132, 33 N. E. (2d), 992.

Directing attention to other statutes, we encounter Section 614-49, General Code (regulation of public utilities), in the following terms:

"Every public utility shall carry a proper and adequate depreciation or deferred maintenance account, whenever the commission after investigation shall determine that a depreciation account can be reasonably required. The commission shall ascertain, determine and prescribe what are proper and adequate charges for depreciation of the several classes of property for each public utility. The charge for depreciation shall be such as will provide the amount required over and above the cost and expense of maintenance to keep the property of the public utility in a state of efficiency corresponding to the progress of the art or industry. The commission may prescribe such changes in such charges for depreciation from time to time as it may find necessary."

Also, Section 614-50, General Code, as follows:

"The moneys for depreciation charges thus provided for shall be set aside out of the earnings and carried as a depreciation fund. The moneys in such fund may be expended in new construction, extensions or additions to the property of the public utility, or invested, and if invested, the income from the investment shall also be carried in the depreciation fund. Such fund and the proceeds thereof, may be used for the purpose

of renewing, restoring, replacing or substituting depreciated property in order to keep the plant in a state of efficiency. Such fund and the proceeds or income therefrom shall be used for no purpose other than as provided in this section, except upon the approval of the commission."

The action as pleaded and tried seems to be based upon the foregoing statutes, although it is asserted that the action is likewise bottomed upon the rules of the common law.

We meet the case *de novo* on appeal from the Common Pleas Court of Lorain county.

The defendant is a small, independent telephone company, operating in Wellington, Lorain county, Ohio, and was organized in 1897 under the laws of Ohio. It has an authorized capital stock of $120,000, divided into $60,000 of common stock with a par value of $100 each, and $60,000 of preferred stock, having a par value of $100 each. Of such authorized capital there are issued and outstanding, 391 shares of common stock, at a par value of $39,100, and 528 shares of preferred stock, with a par value of $52,800, which, combined, shows the total outstanding stock to have a par value of $91,900.

The evidence shows that, as of December 31, 1939, the assets of the company had a reproduction value before depreciation of $207,132.53, and a depreciated value of $155,514.44; that the depreciated value of the property used exclusively in the operation of the business was $134,622.86, and other property not directly used in the business had a depreciated value of $20,891.50. In other words, the evidence shows and the court finds that the financial status of the company is and has been strong and sound; and this is especially so when viewed in the light of the difference between the aggregate of its assets less deductions for depreciation, depletion, losses and bad debts, over the aggre-

gate of its liabilities plus stated capital. (There are no appreciable losses or bad debts, nor are there any liabilities except small current accounts.)

It is true that, during much of the period in which it is claimed dividends were unlawfully paid, the books of the company were inadequately kept and did not comply with the technical method generally approved for public utilities. Nevertheless, the values existed, whether technically reflected in the books or not.

Under the common law the directors of a corporation may incur liability to their corporation for negligence, and such liability may be enforced against them jointly or severally. "There is no liability, however, either to the corporation or to creditors, if they act in good faith and with due care, unless liability is imposed by some statute. In other words, they are not liable for mere errors of judgment. And it has been held that at common law a mere distribution of a portion of the capital of the corporation to the stockholders in proportion to their respective interests, and which does not impair the power of the corporation to discharge its indebtedness, is not such a waste or misappropriation of its funds as will give the corporation a cause of action against the directors for the amount so distributed." 12 Fletcher, Cyclopedia Corporations (Rev. and Perm. Ed.), Section 5431.

Assuming that the action is properly brought under the rules of the common law, we do not find that there was actionable negligence which may be asserted against the defendants. We do not find that the corporation, creditors or the general public have suffered any injury because of the action of the directors.

An individual stockholder cannot prevail in a suit on behalf of the corporation, at least under the principles of the common law, when there has been no injury either to the company, to the individual stockholders, or to the general public, merely because some formali-

ties of the law have not been met. And the fact that directors have acted informally in the distribution of a dividend when the financial condition of the company has warranted such distribution, does not render them liable if they have caused no harm.

It is asserted by the petitioner that this action is brought under both the common law and the statutes.

We do not undertake to determine in this appeal whether the statutes provide an exclusive remedy or not, for the reason that, under either or both theories, the petitioner's claims must fail.

The case of *Scullin* v. *Mutual Drug Co., supra,* when analyzed in the light of the pleadings and the evidence under investigation, demonstrates the failure of the plaintiff to establish a case under the General Corporation Act (Section 8623-123*b* *et seq.,* General Code). Does it establish a case under Sections 614-49 and 614-50, General Code (public utilities commission chapter)?

The first paragraph of Section 614-49, General Code, provides a condition precedent to a claim of statutory violation. It provides that after the Public Utilities Commission *has determined* that a depreciation account can be reasonably required, then such commission shall order the public utility to carry a proper and adequate depreciation or deferred maintenance account. The statute then enjoins certain duties upon the Public Utilities Commission. The following section (Section 614-50, General Code) provides for the various uses for which the fund so *required* by the commission may be used, and concludes in the following language: "Such fund and the proceeds or income therefrom shall be used for no purpose other than as provided in this section, except upon the approval of the commission."

We have analyzed the essentials of these statutes and their practical operation, to indicate the question

in this case. Authority is not lacking that the Legislature could have gone further, but we are not called upon to determine the extent of the legislative power beyond the limits of its exercise.

While the record shows that a depreciation fund, as such, was not in existence during the period in question, it also shows that the Public Utilities Commission had never required such a fund. And in this connection, an order by the Public Utilities Commission under the provisions of Section 614-10, General Code, does not supply the condition precedent imposed by Section 614-49, General Code, and create a liability of the kind sought here.

We determine, therefore, that no case has been made under these provisions of the statute.

A decree will be entered dismissing the petition of the appellant.

*Petition dismissed.*

STEVENS, P. J., and WASHBURN, J., concur.